487 P.2d 133

Elirio RAEL and Rosa C. Rael, his wife, Plaintiffs-Appellees,

v.

Frank CISNEROS et al., Defendants-Appellants.

No. 9144.

Supreme Court of New Mexico.

July 2, 1971.

Barry Rudolf, Santa Fe, for appellants.

Eliu E. Romero, Taos, Bachicha & Corlett, Santa Fe, for appellees.

## OPINION

STEPHENSON, Justice.

From a judgment quieting the title of plaintiffs-appellees, three of the numerous defendants have appealed. We affirm.

The land in question (the land) was patented to the heirs of Eugenio Gonzales in 1920. Eugenio Gonzales was survived by his wife, Rosita Gonzales, now deceased, by whom he had eight children, including:

A. Irene Gonzales Rael, a daughter, wife of Salomon Rael. Salomon and Irene Rael were both deceased at material times. They were the parents of appellee Elirio Rael.

B. Flavio Gonzales, a son, deceased father of appellant Corina Cisneros.

C. Cristino Gonzales, a son, deceased husband of appellant Agapita Gonzales.

Prior to suit, appellee Elirio Rael obtained various deeds from heirs of Eugenio Gonzales and members of their families, and a deed from his parents. The trial court held such deeds to be valid and effective to vest in appellee a good title to the land in question. It also held appellee had title by adverse possession.

The appellants assert that both limbs of the court's decision are unsupported by substantial evidence and attack the court's determination of the validity of a certain tax deed which we will discuss presently. In addition, appellant Agapita Gonzales contends that a certain deed was procured by appellee from her by fraud.

Appellant Agapita Gonzales did in fact execute a deed to appellee in 1950. She testified to circumstances surrounding the execution and delivery of the deed from which the trial court might have found fraud. However, appellee's testimony differed in material respects from that of Mrs. Gonzales, and described the acquisition of the deed in a manner free from fraud. The trial court found that the deed was not fraudulently obtained. Its finding is supported by substantial evidence and will not be disturbed.

Appellants assert that appellee failed to prove that the lands described in the complaint were the same as those described in the patent and the various deeds to appellee and the tax deed to appellee's father, i. e., that the trial court's contra finding is unsupported by substantial evidence. We invite attention to Supreme Court Rule 15(6) [§ 21–2–1(15) (6), N.M. S.A., 1953] which requires the party contending that findings of fact are not supported by substantial evidence to state the substance of *all* evidence bearing upon the proposition.

We have examined those portions of the record cited by the parties in support of their respective positions and are of the opinion that the court's finding regarding adequacy of the descriptions in the complaint, patent and deeds is supported by substantial evidence.

The trial court found that Salomon Rael, father of appellee, had been in exclusive possession of the land from about 1930. It is to be recalled that he was not an heir of Eugenio Gonzales, although his wife Irene was one of the latter's daughters. It follows that the interest of Irene Rael was her separate property. In March, 1941, the land was sold by the Taos County Treasurer to the State for non-payment of 1937 taxes, plus penalty, interest and costs. The tax deed recited that the lands had theretofore been assessed to Salomon Rael. In July of that year, Salomon Rael made application to the State Tax Commission to repurchase the land and a few days later

entered into a contract with the Commission to repurchase. In September, 1942, the Commission conveyed the land to Salomon Rael. In February, 1960, Salomon Rael and Irene G. Rael, his wife, conveyed the land to appellee Rael.

Appellants point out that Salomon Rael's application to repurchase falsely stated that title to the land was vested in him at the time of issuance of the tax deed from the Taos County Treasurer to the State, and that in the repurchase contract he falsely covenanted and warranted that he was the owner of the land whose title had been extinguished by the Treasurer's deed to the State.

Appellants claim that these misrepresentations invalidated the deed from the Tax Commission to Salomon Rael, and since he could not convey a title which he did not own, his deed to Elirio Rael conveyed nothing.

■ Fraud must be proven by clear and convincing evidence. Hockett v. Winks, our No. 9094, decided May 10, 1971, 82 N. M. 597, 485 P.2d 353. The means of determining whether the requisite quantum of proof has been shown was stated in Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299 (1955). Appellants requested a conclusion of law to the effect that the tax deed was procured by fraud. The trial court found as a fact and made a conclusion of law that the tax deed was valid, thereby determining an absence of fraud.

■ The tax deed was prima facie evidence of its validity. Section 72–8–43, N. M.S.A., 1953. It may be doubted that, with the record in the state we have described, the proof is sufficient to require us to determine the existence of fraud in the procurement of the tax deed by Salomon Rael as a matter of law. We will, however, for purposes of our discussion, assume that fraud was shown.

Appellants rely upon Trujillo v. Montano, 64 N.M. 259, 327 P.2d 326 (1958). That case does stand for the proposition that "any person who procures a tax deed from the State under the provisions of Section 72–8–31, supra, when he has no right, title or interest in the property, acquires no title to the land sold," and that a subsequent deed from the fraudulent purchaser to a third person is a "nullity" and has no "force or effect."

This reasoning, however, has been restricted to the precise facts of that case. This was most strongly exemplified in the case of State ex rel. State Tax Commission v. Garcia, 77 N.M. 703, 427 P.2d 230 (1967), in which the court stated that Trujillo v. Montano, supra, and similar cases "must be restricted to the fact situations there being considered." After quoting from the case of Eager v. Belmore, 53 N.M. 299, 207 P.2d 519 (1949), the court in Garcia stated:

"In this language we perceive a recognition that 'void' does not always mean 'absolutely void' but, to the contrary, when it is clear that such a meaning was not intended, it may mean 'voidable.'"

Appellants also rely upon Velasquez v. Mascarenas, 71 N.M. 133, 376 P.2d 311 (1962) as authority for the proposition that repurchase and payment of taxes restores the title to its status prior to the tax sale. The facts in Velasquez are distinguishable. That case held that repurchase by a cotenant inured to the benefit of all cotenants. Appellants here have been at pains to point out that so far as the record shows, Salomon Rael was not a cotenant and owned no interest in the land. This, in truth, is the principal thrust of their argument.

It seems to us the case most nearly applicable is State ex rel. State Tax Commission v. Garcia, supra. In that case, Mr. Garcia had fraudulently obtained deeds from the State Tax Commission. He then sold the lands to others. In a suit to cancel the fraudulently procured deeds, the State made the identical argument that Appellants make here, viz., that inasmuch as the deeds were fraudulently procured, they were void, and the person so procuring them had no title to convey. The court, after careful consideration, held that under the circumstanc-

es there present, the fraudulently procured deeds were not void, but only voidable, and passed good title to bona fide purchaser:

"[A] purchaser for value without notice of shortcomings in the proceedings which could be raised by a previous owner under the statutes, or which would become apparent from a reasonable examination of the record, took free from such defect."

In their attack upon the tax deed, appellants have failed to meet the requirements of § 72–8–20, N.M.S.A., 1953.

There remains the question of whether appellee Rael is to be regarded as a bona fide purchaser for value without notice in respect to the deed from his parents. This is a phase of the case which seems to have received little attention below. The court made no findings directly on this subject, but appellee Rael's status as a bona fide purchaser is easily inferred in support of the judgment from the court's finding that the deed was valid. Appellants do not concede that appellee Rael was a bona fide purchaser for value without notice, but failed to allege, prove or attempt to prove anything to the contrary, or even argue that he was not.

 The deed from Salomon Rael et ux. to Elirio Rael is a Spanish warranty deed, regular on its face. A deed, being merely a specialized form of contract, consideration is imported in the same manner and as fully as sealed instruments. Section 20–2–8, N.M.S.A., 1953. Moreover, the deed recites a consideration of $300.00, considerably more than Salomon Rael paid the Tax Commission.

The record, furthermore, is barren of any evidence which would tend to color appellee Rael's acquisition of the property from his father with the mark of bad faith.

We are of the opinion that Elirio Rael was a bona fide purchaser for value without notice of any defect in the tax deed to Salomon Rael, and the court's conclusion of the validity of the various deeds to Elirio Rael is sustained.

Having held that the trial court's decision that Elirio Rael proved a good record title to the land, we find it unnecessary to consider whether he proved title by adverse possession.

The judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and OMAN, J., concur.