197 P.2d 430

### DAVIS v. CAMPBELL.
### No. 5103.

Supreme Court of New Mexico.
Sept. 8, 1948.

Rueckhaus & Watkins, of Albuquerque, for appellant.

F. Ernest Ayers, of Estancia, for appellee.

LUJAN, Justice.

On September 14, 1944, plaintiff, who was in the business of publishing biographical sketches of the lives of New Mexico citizens in a book called the Historical Encyclopedia of New Mexico, through his agent and representative, R. D. Ross, secured a subscription from D. B. Campbell, Sr., the defendant, for a copy of this book, for the sum of $38.50. This subscription or note reads as follows:

"I hereby authorize the New Mexico Historical Association to prepare and insert in the Historical Encyclopedia of New Mexico, and I hereby subscribe for one (1) set of said encyclopedia for which I promise to pay Thirty eight Dollars and fifty cents ($38.50) to New Mexico Historical Association or order, at Albuquerque, New Mexico, one-half of said amount payable on this date and balance payable on submission of biographical sketch."

On the same day the defendant entered into an agreement whereby he agreed to furnish the plaintiff with a photograph of himself and the plaintiff was to prepare a portrait engraving therefrom to be inserted in the encyclopedia for the sum of $275.00, upon submission of proof of the engraving. Accordingly, the defendant furnished the plaintiff with data from which he was to write a biographical sketch of his life, together with a kodak snapshot of himself, as well as a kodak picture of his wife.

On March 11, 1945, the plaintiff personally called upon the defendant and submitted to him a biographical sketch which was typewritten, but on account of his poor eyesight, plaintiff read it to him, likewise the engraving of his picture. However, no printer's sketch was either presented nor read to him. At the request of plaintiff, the defendant gave him a check in the sum of $313.50, and then the plaintiff procured the following instrument from him:

"I hereby authorize New Mexico Historical Association to have prepared a portrait engraving from photograph to be inserted in the Historical Encyclopedia of New Mexico, for which I promise to pay the sum of Two Hundred Seventy-five and no/100 Dollars to said Company order at Albuquerque, New Mexico, payable on submission of proof of said engraving. I al-

so agree to furnish them my photograph within thirty days from this date, failure of which will render the above amount payable on demand."

It is to be noted that nothing is said in this instrument as to the defendant's wife. Subsequently the encyclopedia was published containing an erroneous biographical sketch of the defendant's life together with his and his wife's pictures.

On September 7, 1946, the encyclopedia was delivered to the defendant, whereupon he signed and delivered to the plaintiff, the following receipt:

"Received from the New Mexico Historical Association one copy of the Historical Encyclopedia of New Mexico in which biographical sketch and portrait appears as per agreement."

This suit was filed by the plaintiff on the alleged contract or note of March 11, 1945, alleging that the defendant was indebted to him thereon in the sum of Two Hundred and Seventy-five Dollars; and that he had performed all conditions precedent in said contract. A copy of the subscription and note were made a part of the complaint and marked exhibit "A".

The defendant denied the allegations of the complaint and further alleged that the plaintiff did not submit a proof of the engraving of the photograph of his wife; that he did not approve any proof of the engraving for publication in the encyclopedia; and that the photograph of his wife as inserted by the plaintiff in the encyclopedia was of poor quality and inferior to the photograph submitted to him.

By way of an affirmative defense, the defendant alleged that the contract was procured by fraudulent misrepresentations of the agent and representative of the plaintiff, in that the plaintiff agreed to publish a biographical sketch and portrait of the defendant and to insert a portrait of his wife in the encyclopedia; that in order to secure the consent of the defendant to the publication of the biographical sketch and the insertion of the two photographs, the plaintiff represented to him that if he would insert and pay for the insertion of his picture, the plaintiff would include his wife's picture free of charge; that plaintiff's agent misrepresented the amount of said payment; that the signing of the note was only to authorize the insertion of his wife's picture and that it would not cost him anything more than the cost of his biographical sketch and photograph; that he has paid for it and does not owe the plaintiff anything. He further alleged that the representations made by plaintiff's agent were known to be untrue at the time, and were recklessly made with the intent to deceive the defendant and for the purpose of inducing him to act upon them; that defendant relied upon these misrepresentations,

and in reliance of same signed the papers required to be signed by the plaintiff or his agent; that he was injured by ridicule, unfavorable publicity and additional expense thereby. He also alleged that the biographical sketch of his life as published by the plaintiff in the encyclopedia was not correct in certain instances; and that the plaintiff did not submit the biographical sketch to him for his approval before it was published, although he had agreed to do so.

By his cross-complaint, the defendant adopted the allegations contained in his affirmative defense and prayed for damages as a result thereof.

It is to be noted that the note upon which this suit is founded, marked plaintiff's exhibit No. 1, and introduced in evidence differs materially from plaintiff's exhibit "A" which was made a part of his complaint. The plaintiff in his exhibit "A" after the word "from" inserted the words "Mrs. D. B. Campbell's photograph", which do not appear in his exhibit No. 1.

Plaintiff urges four assignments of error in support of his contention that the judgment should be reversed, as follows:

1. That there is no evidence that the subscription sued on by the plaintiff was secured from the defendant by fraud.

2. That the parole evidence rule excludes evidence of prior or contemporaneous oral agreements which would vary the written contract.

3. That the plaintiff did not violate his agreement to submit proof of the biographical sketch of the defendant for his approval before publishing same in the Historical Encyclopedia of New Mexico.

4. That the defendant has not shown that he sustained any damage as a result of the errors in his biographical sketch.

After hearing all the evidence on the issues raised by the pleadings thereto, the trial court made the following findings of fact, to-wit:

"1. That the note sued on by plaintiff was secured from defendant by fraudulent representations to the effect that there was no charge in addition to what defendant had already paid to plaintiff.

"2. That the note designated as 'Plaintiff's Exhibit 2' was secured by plaintiff by a fraudulent representation that the amount was two seventy-five, when in fact it was a note for two hundred seventy five dollars.

"3. That the salesmanship used by the plaintiff and his agent, R. B. Ross, in securing Plaintiff's Exhibits 1, 2 and 3 was slick salesmanship of a type intended to defraud defendant, and did result in defrauding defendant through his reliance on the representations made by plaintiff and his agent, R. B. Ross.

"4. That the defendant relied upon the representations made by the plaintiff and his agent, R. B. Ross, and that it was proper for defendant to rely upon the representations made by the plaintiff and his agents, because of defendant's poor eyesight, his age and his lack of education.

"5. That the biographical sketch of defendant, as published by plaintiff in the Historical Encyclopedia of New Mexico, was not correct as to the time defendant had lived in Torrance County, New Mexico, and was not correct as to the time when defendant left Blue County, Oklahoma, and the resulting inference as to the age of defendant, resulting from these misrepresentations together with the stated age of defendant when he came to Torrance County, caused defendant embarrassment and ridicule and resultant damage.

"6. That plaintiff did not submit a proof of the biographical sketch of defendant to defendant for his approval before publishing said sketch in the Historical Encyclopedia of New Mexico, and plaintiff thereby violated his agreement as shown by plaintiff's Exhibit 1. That the failure of plaintiff to submit a proof of the biographical sketch as agreed, subjected defendant to embarrassment and ridicule, and resulted in giving him an inferior biographical sketch, to his damage.

"7. That plaintiff's agent, R. B. Ross, represented that the insertion of the biographical sketch would not cost anything in addition to the cost of the picture of defendant in the Historical Encyclopedia of New Mexico. Said representation was known to be false by said agent when it was made and it was made to help secure Plaintiff's Exhibits 1, 2 and 3 in this suit. Defendant relied on said representation, to his damage.

"8. That defendant was damaged by the fraudulent representations of plaintiff and his agent, R. B. Ross, and by the incorrect publication of the biographical sketch, in the amount of $200.00.

"9. That 'Plaintiff's Exhibit 4' the check to plaintiff by defendant, was paid only after protest to plaintiff about the representations that had been falsely made by plaintiff's agent, R. B. Ross.

"10. That when the agent of plaintiff delivered the set of the Historical Encyclopedia of New Mexico to defendant, defendant was told that it was merely a receipt for the two books, and defendant was not told that the receipt stated that the biographical sketch and portrait appeared therein as per agreement; that defendant was not able to examine and read the receipt at that time, and had to rely on the representations of plaintiff's agent, because of the eyesight of defendant being poor."

From the foregoing findings of fact the court concluded as a matter of law:

"2. That plaintiff's Exhibits 1, 2 and 3 were secured by fraudulent misrepresenta-

tions to defendant; said representations having been made knowing their falsity, and with intent that defendant should rely on them, and defendant having relied on them to his injury, plaintiff is not now entitled to collect anything on them, because of his and his agent's fraud in the inducement of said contract. A plaintiff may not recover on a contract induced by his own or his agent's fraudulent representations, made in the regular course of plaintiff's business.

"3. That a contract in writing may be varied by oral proof of fraud in the inducement.

"4. That plaintiff having by his own evidence, on direct examination, admitted making an oral agreement with defendant as to the time for payment of 'Plaintiff's Exhibit 3', on which plaintiff based this suit, which oral agreement was at variance with the printed 'Plaintiff's Exhibit 3', thereby opened the door for further oral proof by defendant, at variance with the written contract.

"5. That defendant having already paid under protest, more than he agreed to pay plaintiff, is under no obligation to pay any more.

"6. That 'Plaintiff's Exhibit 1', in any event, must be interpreted as an agreement by plaintiff to furnish a correct biographical sketch. It cannot be said as a matter of law that a contract to furnish a biographical sketch would be a contract to furnish anything other than a correct biographical sketch. Failure to furnish a correct biographical sketch in this case was a breach of the contract by plaintiff, for which defendant is entitled to damages."

Under his point one, plaintiff urges that there is no evidence that the subscription sued on by him was secured from the defendant by fraud, and that the lower court reached into the empty air to find facts with which to establish a fraudulent conduct on his part as well as that of his salesman, but, by his brief, plaintiff fails to give us the substance of all of the evidence touching upon the transaction involved in this litigation, and hence does not show a compliance with section six of Rule 15 of the Supreme Court. Sands v. Sands, 48 N.M. 458, 152 P.2d 399; Ritter-Walker Company v. Bell, 46 N.M. 125, 123 P.2d 381; Alamogordo Improvement Co. v. Pendergast, 45 N.M. 40, 109 P.2d 254. Nevertheless, we have carefully examined the entire testimony and are of the opinion that there was substantial evidence to support each of the findings attacked. This court resolves all disputed facts in favor of appellee and views the evidence in the aspect most favorable to him. Sands v. Sands, supra; and McDonald v. Polansky, 48 N.M. 518, 153 P.2d 670.

It is next contended by the plaintiff, that the parol evidence rule excludes evidence of prior or contemporaneous oral agreements which would vary the written

contract. We agree with this contention. However, the rule that oral representations and inducements preceding or contemporaneous with the agreement are merged in the writing is subject to the exception that, if the representations amount to fraud which avoids the written contract, they are not merged therein, and parol evidence is admissible to show the fraud. People v. Orekar, 22 N.M. 307, 161 P. 1110; and Morstad v. Atchinson T. & S. F. Ry. Co., 23 N.M. 663, 170 P. 886. Therefore, if a signature is procured by fraud, the party so defrauded is not barred from relief by the fact that he failed to read or have read the contract to him before signing it, and he may plead such facts constituting fraud in defense to a recovery upon such writing. Vermont Farm Machinery Co. v. Ash, 23 N.M. 647, 170 P. 741. The answer in this case sufficiently alleged the fraud perpetrated upon him by the plaintiff.

As to point three, it is sufficient to say that the court's specific finding of fact No. 6, is supported by substantial evidence, and is therefore, for the purpose of review, the fact in the case. This finding of fact is a sufficient basis for the conclusion of law and the resulting judgment. We have carefully examined the testimony, concluding as above stated.

Finally it is urged that the defendant has not shown that he sustained any damage as a result of the errors in his biographical sketch. We are of the opinion that the defendant's proof in this respect was sufficient to support the court's finding that he had suffered damages. The defendant furnished the plaintiff with data from which he was to prepare a biographical sketch and submit a printed proof to the defendant for his approval. Plaintiff prepared a typewritten biographical sketch of defendant's life which he read to him, but did not submit a printed proof thereof, and after the biographical sketch was published in the Historical Encyclopedia of New Mexico and delivered to the defendant, he discovered that the biographical sketch of himself as published in the aforesaid encyclopedia was not correct in many instances and specially as to the time he had lived in Torrance County, New Mexico, nor as to the time he left Blue County, Oklahoma, and the resulting inference as to his age. There is no doubt that the plaintiff violated his contract in failing to submit a printed proof of defendant's biographical sketch for his approval before it was finally published in the encyclopedia, and there is no question but that defendant is entitled to damages on his cross-complaint, although his proof was weak establishing the amount. The trial court allowed $200.00, and considering all the facts and circumstances we believe that it was justified in allowing this amount.

Absolute certainty as to damages sustained is, of course, in many cases impossible; all that the law requires is that

such damages be allowed as directly and naturally result from the injury. Damages may be recovered notwithstanding that they cannot be calculated with absolute exactness. In cases of this kind, or in such cases as damages for personal injuries, pain or mental anguish, where the damages cannot possibly be exact, the findings of the court will not be disturbed unless clearly wrong. Nichols v. Anderson, 43 N.M. 296, 92 P.2d 781.

Finding no error the judgment is affirmed, and it is so ordered.

BRICE, C. J., and SADLER, McGHEE, and COMPTON, JJ., concur.