485 P.2d 361

Roger PATTISON, dba Yerba Feed Pens, Plaintiff-Appellant,

v.

A. T. FORD and Roosevelt County Electric Cooperative, Inc., a Corporation, Defendants-Appellees.

No. 619.

Court of Appeals of New Mexico.

April 30, 1971.

James C. Compton, Portales, for appellant.

Jay Morgan, Portales, for appellees.

## OPINION

WOOD, Judge.

Plaintiff sought damages for alleged fraud in connection with two boilers and the cost of electrical service. Defendants moved to dismiss the complaint. In granting the motion, the trial court stated: "* * * assuming, for the purpose of the motion, that all allegations pleaded by the plaintiff are true, he is not entitled to the relief prayed for." Thus, the dismissal was for failure to state a claim upon which relief can be granted. Section 21–1–1(12)(b) (6), N.M.S.A.1953 (Repl.Vol. 4). The issue, then, in plaintiff's appeal, is whether "* * * it appears that plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim. * * *" Jones v. International Union of Operating Engineers, 72 N.M. 322, 383 P.2d 571 (1963). In deciding this issue, we examine the reasons relied on by the trial court in dismissing plaintiff's complaint.

The complaint alleges negotiations for electrical service were instituted by defendant Ford, acting on behalf of the electric cooperative; that Ford figured the cost of operating three boilers, eight hours per day, and figured 7,200 kw hours at a cost of 8 mills per kilowatt [sic], or $57.60 per day. It is alleged that this cost was figured on a blank agreement for electrical service, on a form prepared by the cooperative, and that "* * * a copy of said agreement for electric service, with the figuring as to the cost per kilowatt hour by the defendant Ford, and as represented to plaintiff, * * *" is Exhibit A to the complaint.

Subsequently, plaintiff signed a contract for electrical service, identified as Exhibit C to the complaint. Plaintiff alleges he did not read the contract before signing it because of Ford's "prior representations;" that the present "demanded charge" is four times the eight mill rate "quoted by the defendant Ford in his official capacity;" "* * * [t]hat plaintiff was assured by the defendant Ford, at the time of their first negotiations and thereafter, that all of the electricity charges would be as hereinabove represented * * *;" that "* * * [b]y reason of the specific statements and figures presented by the defendant Ford, * * *" plaintiff purchased the boilers and contracted for electrical service from the cooperative.

The elements of fraud are stated in Prudential Insurance Company of America v. Anaya, 78 N.M. 101, 428 P.2d 640 (1967), and Sauter v. St. Michael's College, 70 N. M. 380, 374 P.2d 134 (1962). No claim is made and the complaint was not dismissed on the basis that the elements of fraud were not pleaded.

The trial court ruled that "* * * plaintiff has failed to allege any legal excuse to read the electric service agreement so signed by him. * * *" This is incorrect. Plaintiff alleged he was induced to enter the contract by Ford's prior fraud. As to fraud in the inducement see McLean v. Paddock, 78 N.M. 234, 430 P.2d 392 (1967). There are circumstances where a failure to read a contract, before signing it, does not bar recovery for fraud. See Davis v. Campbell, 52 N.M. 272, 197 P.2d 430 (1948); Morstad v. Atchison, T. & S. F. Ry. Co., 23 N.M. 663, 170 P. 886 (1918); Vermont Farm Mach. Co. v. Ash, 23 N.M. 647, 170 P. 741 (1918). Since, under facts provable under the claim, plaintiff might recover even though he failed to read the contract, the trial court erred in dismissing on this ground.

The trial court ruled that "* * * plaintiff is charged with knowledge of the schedule of rates contained in the contract, as shown by the exhibits. * * *" This

basis for dismissal is erroneous because the contract in the record before us, which is Exhibit C, contains no schedule of rates. A schedule of rates is a part of Exhibit A but there is nothing in the exhibits, nor in the complaint, indicating this schedule applies to the contract signed by plaintiff. The only cost figures in Exhibit C refer to a minimum kilowatt "demand" for billing purposes and a minimum monthly charge. Both minimums exceed the comparable minimums stated in Exhibit A. Defendants, in their brief, explain these charges and assert they do not represent a change in rates over the "preliminary figuring," but nothing in the record supports these assertions. We do not go outside the record. State v. Andrada (Ct.App.), 82 N.M. 543, 484 P.2d 763, decided March 26, 1971. With these discrepancies between Exhibits A and C, we cannot state that plaintiff would not be entitled to relief under any state of the provable facts.

The trial court ruled that: "* * * the form of agreement for electrical service and the large power service schedule, a copy of which is attached to the complaint as Exhibit 'A', and the contract signed by the plaintiff for electric service, a copy of which is attached to the complaint as Exhibit 'C', show the schedule of the charges to be made. * * *" We have previously pointed out that Schedule C does not show a schedule of charges; that it refers only to a minimum monthly charge and a minimum kilowatt "demand," both of which conflict with Schedule A and are unexplained in the record. Thus, any showing as to the charges to be made must appear in Schedule A.

One sheet of Exhibit A shows the calculation of 7200 kw hours at 8 mills per kilowatt hour. The same sheet contains the notation: "72 hrs = 10% load factor to get 8 mil [sic] rate." Defendants contend this notation shows the number of hours plaintiff would have to operate his equipment, and at what load factor, in order to reach an eight mill rate. Thus, de-fendants assert the notation on which they rely should be accepted as true, without any evidence concerning that notation. They disregard plaintiff's claim of a "quoted rate" of 8 mills.

Exhibit A contains a sheet which itemizes various items of equipment. Defendants state this is a listing of electrical equipment, other than the boilers. They assert plaintiff has ignored the amount of electrical energy this other equipment would use. The complaint, however, alleges that "all of the electricity charges would be as hereinabove represented;" that is, at the eight mill rate.

There are two sheets in Exhibit A which lend support to the view that the eight mill rate was part of a graduated scale of "ener-gy" rates and that the energy rate was to be distinguished from a "demand" rate. Defendants assert that the various sheets in Exhibit A show plaintiff was furnished with information setting out the demand charges and the energy charges. The complaint alleges, however, that the "demand-ed charge" is four times the "quoted" eight mill rate. The fact that "demand" charges appear in Exhibit A does not answer plain-tiff's claim that he was quoted an eight mill rate for all electrical charges.

Specifically, part of Exhibit A, on which plaintiff relies, does appear to contradict the "representations" on which plaintiff also relies. With this apparent contradic-tion, it cannot be held, without any ex-planation as to the figuring or the repre-sentations, that the figuring contained in Exhibit A "shows the schedule of charges to be made." Nor can we hold, in the light of the allegations of the complaint, that plaintiff cannot recover under any state of facts provable under the claim.

The order of dismissal is reversed. The cause is remanded with directions to set aside the order of dismissal and reinstate the complaint on the docket.

It is so ordered.

SPIESS, C. J., and SUTIN, J., concur.